This is an appeal of the American Sugar Refining Company, defendant, from a judgment awarding John L. Lala, plaintiff, workmen's compensation at the rate of $20.00 per week for 400 weeks, less the amount of $148.27 representing compensation already paid.
Plaintiff was employed by defendant as a sugar drier at its Chalmetto, Louisiana, plant, operating centrifugal machines. On March 28, 1947, he slipped on a circular stairway in the plant and fell about two and a half stories (approximately sixty feet), his head and face striking an iron *Page 417 
post during his descent. He was taken to the Hotel Dieu hospital, where he was given surgical treatment by Dr. Carl N. Wahl to repair various facial injuries. He remained in the hospital for about thirteen days, and for this period was paid compensation at the rate of $20.00 per week. He was also paid compensation for several weeks after his discharge from the hospital, until defendant's manager learned that he had gone to work for the Western Union Telegraph Company; plaintiff was still employed by the telegraph company at the time of the trial below.
There is no dispute that plaintiff sustained severe injuries, but defendant contends that he is not disabled; there is likewise no dispute that plaintiff's weekly wage was in excess of $31.80, and that if compensation is awarded him it should be fixed at the maximum amount.
Plaintiff alleged that he is totally and permanently disabled; that he suffers a traumatic neurosis and is nervous, neurotic, and emotionally upset, and extremely sensitive to noise; that he continues to suffer periodic and severe headaches and pains; that he cannot rest or sleep; all of which inhibits him from doing the same character of work that he performed for defendant, or any other kind of work about machinery or where there is noise.
The lower court, after a trial on the merits, awarded judgment in plaintiff's favor.
The sole question presented is whether the traumatic neurosis and emotional disorder, from which all psychiatric experts agree he is suffering, prevents plaintiff from returning to his former occupation.
Dr. Wahl, who specializes in maxillofacial and plastic surgery, appearing for defendant, testified regarding the treatment accorded plaintiff, and his opinion is that all fracture sites are well healed, and that Lala's facial bones are in perfect position, and there remains no impairment of function. According to Dr. Wahl, the cosmetic results were excellent.
Dr. Sam Nelken, a specialist in psychiatry and neurology, testifying for plaintiff, stated that he examined Lala on January 22, 1948, and made a written report to plaintiff's attorney. The report showed:
"* * * Mr. Lala is undoubtedly suffering from a neurotic (conversion-hysterical) reaction resulting from his fall. The manner in which the injury produced this reaction is uncertain. Emotional shock is most probably the major factor; * * *.
"* * * The neurotic symptoms, while they do not keep him from working under restricted circumstances, do make him unable to work in situations where there is any considerable noise or pressure of activity, such as the job in which he was injured; they also interfere markedly with his enjoyment of life. Proper treatment may be able to give him considerable relief; but if such benefit can be obtained at all, it will probably be with much difficulty and only after a long course of treatment."
Dr. Nelken made a second examination of plaintiff the day before the trial was held in the lower court, and, referring to this examination, stated that there was no change of special significance in Lala's condition. When asked if Lala was capable of working at industrial pursuits or in a factory or refinery where there is a considerable amount of noise, his answer was, "I should think not."
Dr. Henry O. Colomb, who specializes in neurology and psychiatry, examined Lala at the behest of defendant on March 20, 1948, and rendered a written report of his findings, which in part reads:
"It is my opinion that Mr. Lala's nervousness was precipitated by the accident which he suffered at the American Sugar Refinery. He shows evidence of constitutional inadequacy and he has a record of shifting occupational adjustment which is the usual background we find in these traumatic emotional disturbances. * * * It has caused him some discomfort and although it has not been totally disabling, it has probably interfered with his working adjustment to a certain extent."
Questioned on cross examination as to the ability of plaintiff to return to his sugar refinery work, Dr. Colomb testified:
"Q. Well, do you say it was probable he could do it, he could go back? A. It is, yes. *Page 418 
"Q. And it is possible he could not? A. That would be an assumption."
This doctor testified that he made no examination of Lala except the one covered by the report, and that he was not in a position to give an opinion as to his condition as of the date of the trial.
Dr. John W. Bick, Jr., who also specializes in psychiatry and neurology, identified a report made by him on June 19, 1948, respecting Lala's condition, the pertinent part of which reads:
"* * * The patient's complaints have already been stated. It is significant that he has never tried to work at his former occupation, and I believe the fact that his present job carries a better salary is an important factor. I think it is also significant to note that he left one job with Todd-Johnson apparently for reasons not unlike those which caused him to leave his present employment. He states that at the time when working in the bottom of the ship he became afraid of objects falling around him and grew fearful of his personal safety. As a result he left the company for whom he was working and obtained a job which he regarded as 'safe and not so nerve racking.'
"It is my opinion that there is insufficient evidence here to justify the conclusion that the patient is unable to return to his former type of employment. It is especially significant that he resigned from another job several years ago because of fear for his personal safety."
Dr. Bick admitted it was possible that Lala was laboring under a neurosis, but he held to his theory that such condition was nondisabling. This physician reached the conclusion that there was a tendency on Lala's part to make job changes, and such symptom could be associated with the various types of emotional instability. His records show that he had been informed by Lala that the latter has resigned from a job at the Todd-Johnson Shipyard because he entertained fear for his personal safety, and because he could not endure working in the hold of ships where noises were prevalent and tools were constantly being dropped by workmen.
Lala denied that he quit the Todd-Johnson job for the reason assigned by Dr. Bick. His story is that he was forced to give up the job in the Todd-Johnson tool room in order to make way for a returning war veteran who took over the job; that he thereupon accepted employment with Todd-Johnson as a pipefitter's helper and worked a short while at this particular assignment, but quit because work was slack and he worked only two or three days a week. Be that as it may, however, the record shows that Lala, who was twenty-eight years old at the time of the trial below, had only worked for four employers, including his present job at the Western Union Telegraph Company.
Dr. Howard H. Karr, neurological surgeon, a defense witness, testified that he examined Lala on December 19, 1947, and submitted a report of his findings, the gravamen of which is that there was no disclosure of any residual that could be attributed to the injury, and there was nothing to suggest that Lala had suffered from an intracranial injury. It was admitted by counsel, and by the witness himself, that Dr. Karr made no psychiatric examination, and that his inquiry was confined to ascertaining whether Lala had suffered any brain injury.
Plaintiff lives in New Orleans with his wife, their three year old child, and several of his wife's relatives. He testified that during and after convalescence he continued intermittently, two or three times a week, to suffer from severe and prolonged headaches; that his weight dropped from 170 to 145 pounds; that he is unable to sleep soundly at night, as his sleep is interfered with by nightmares, and that on frequent occasions he dreams that he is falling through space and wakens in a cold sweat. He further stated that he is nervous and emotionally upset, and for that reason sought the employment at Western Union Telegraph Company on a night shift so that he could work in surroundings free from loud noises and confusion. He claims that he cannot bear to be or remain around noises, as noise and confusion disturbs and irritates him, increasing his nervousness. He testified that prior to the accident he *Page 419 
had worked under various conditions of noise and confusion; that at Todd-Johnson Shipyard he had worked both in the tool room and as a pipefitter's helper, where there was great noise resulting from riveting, hammering, and sealing of rust and dirt from steel. He likewise worked at Higgins, Inc., in the tool room, where there was so much noise you "couldn't hear yourself talk, and it never bothered me whatsoever." At the defendant's sugar refinery, plaintiff operated three centrifugal machines which were very large and produced "an awful amount of racket; of course I could stand it; it never bothered me; * * *".
Hammel Jackson, a superintendent at the Western Union Telegraph Company, testified that Lala is employed in the telephone department, which is quiet, and works from 3:30 o'clock in the afternoon until 12 o'clock midnight. He observed that while Lala's work is satisfactory he appears to be nervous and fidgety most of the time, and on several occasions, upon complaining of headaches, he was allowed to go home early. The witness stated that on occasion he has seen Lala taking sedatives or other medicines.
Plaintiff's wife and mother-in-law also testified on his behalf. Mrs. Lala declared that since the accident plaintiff frequently has nightmares, and that scarcely a week goes by without his having at least one; that he had a nightmare about 3 o'clock of the morning of the trial. She said that her husband twists and turns in his sleep and sometimes shouts and screams, and that when he is awakened he has the appearance of being frightened, and beads of perspiration stand out around his mouth and on his forehead, and that his sleeping garments are wet with perspiration. After one of such dreams or nightmares, she said, Lala becomes extremely nervous and sleeps no more for the balance of the night.
Mrs. Favalora, plaintiffs mother-in-law, who lives with him and his wife, reiterated the frequent nightmares, nervousness, and headaches. Both she and Mrs. Lala testified that at times a red spot appears on Lala's temple and that a thick vein protrudes and throbs.
Lala admitted that he has made no attempt to return to the sugar refinery, and stated that he cannot do so because of his fear of working around the noise and machinery. He testified regarding an instance when he made a visit to the plant for the purpose of seeing the plant doctor, and said, "the minute I set foot in the elevator I had fear, just the scenery and the machinery and everything — just got me, and I could never do that type of work again."
There is testimony in the record showing that since the accident Lala has been unable to have a normal sexual relationship with his wife, but that prior to the accident this debility had not existed. Dr. Nelken's opinion was that this condition, manifesting itself after the accident to plaintiff, who the record shows is twenty-eight years of age, would tend to confirm the presence of a traumatic neurosis, as it would be within and compatible with the pattern of a neurosis.
Counsel for defendant made objection to much of the testimony tendered by plaintiff, upon the ground that it was both irrelevant and prejudicial, and that its admission would work a serious detriment to defendant's cause. The objections were reurged before us, and counsel contend that the trial judge erred in not maintaining them and excluding the testimony. The objections were addressed to the admissibility of testimony concerning plaintiff's nervousness, inability to stand noise, headaches, difficulty in resting, nightmares, loss of weight, and impairment of sexual powers. Counsel argues that all of these symptoms occurred during the time of plaintiff's satisfactory performance of work for the Western Union Telegraph Company, and would not shed any light on whether plaintiff could or could not return to his work at the sugar refinery. It is contended that the only question before the court is the issue of plaintiff's disability, and that the above symptoms are all matters of indifference to the workmen's compensation law. We are urged to disregard the testimony complained of.
We are not in accord with counsel's contention. The Workmen's Compensation Act, Act No. 20 of 1914, as amended, *Page 420 
in clear and unambiguous language, eliminates strictness and severity in pleading, and relaxes the ordinary rules of evidence, and it would seem that the act contemplates an almost informal mode of hearing cases arising thereunder. Under the established liberal rules of procedure and evidence obtaining in such cases, a court should not hesitate to admit such evidence as would or might have a tendency to show the inability of an injured workman to return to his employment, or contrariwise, to show his ability to work.
True, it is well settled that an injured workman who is plaintiff in an action for compensation, like any other plaintiff, carries the burden of making out his case by a preponderance of the evidence, but nevertheless the court should take a liberal stand on the admission of evidence in seeking out the nature of the plaintiff's injuries, and the extent of his disability. We think that the evidence of which counsel complain does have an important and direct bearing on those question in this case, and the trial court properly overruled the objections.
Defendant, while conceding that plaintiff's injuries were serious, strenuously argues that the Workmen's Compensation Act does not give or grant an injured workman a remedy in tort, but that the statute was enacted for the sole purpose of protecting an injured employee against loss of income during the period of disability resulting from an injury received while at work. Counsel contend that Lala is fully able to return to his former employment, and rely heavily upon the reports and testimony of Drs. Colomb and Bick, which, it is contended, directly contradict the testimony of plaintiff's medical expert, Dr. Nelken.
Plaintiff emphatically claims that he cannot return to his old employment because of the emotional upset, and we cannot entirely disregard his testimony. While there is a divergence of opinion among the psychiatrists regarding plaintiff's competency to work, the fact remains that all of them admitted he was neurotic. Dr. Nelken, who examined plaintiff on the day before the trial below, stated that it was his opinion that Lala could not return to work in the sugar refinery. Dr. Colomb, one of the defense experts, found the presence of traumatic emotional disturbances, which he believed caused Lala some discomfort and probably interfered with his working adjustment to a certain extent. The following recommendation appears in Dr. Colomb's report:
"I would recommend that Mr. Lala be compensated on the basis of his partial disability and his need for treatment of his nervous condition."
We are greatly impressed by the testimony of the plaintiff, his wife, and his mother-in-law, the import of which unmistakably bears out that plaintiff, at the time of the trial, was not a person of normal emotions, and it is not difficult to understand his morbid fear of returning to his old job with the defendant under this prevailing handicap, notwithstanding the testimony of some of the experts that no disability existed. Before the accident, according to the record, plaintiff was a healthy, robust person, and we think that his present condition can be directly attributed to the accident at the sugar refinery, and that there exists a causal connection between his condition and the accident. Courts ofttimes have been guided by lay testimony where the medical experts expressed conflicting opinions regarding a plaintiff's capability to work, and we believe in this particular case that the testimony of the lay witnesses is very enlightening and should be given consideration, along with all facts and circumstances shown by the record. It is true that Lala made no attempt to return to work at the sugar refinery, but that is beside the point and should not militate against his recovering compensation, for the question to be resolved is not whether he made an attempt to return to work, but rather is he able to return, and the record convinces us that he is not. As there is no evidence disclosing the probable duration of the affliction, plaintiff must be classified as being totally and permanently disabled. There is nothing in the record to justify a finding that plaintiff is malingering. *Page 421 
There is no doubt in our minds that nervousness, neurosis, or emotional disturbances, superinduced by injuries suffered by a workman, can be just as devastating to the ability to return to work as are physical or anatomical injuries, and are equally as compensable under the statute.
Our brothers of the second circuit, in case of Porter v. W. Horace Williams Co., La. App., 9 So.2d 60, 63, were concerned with a plaintiff who suffered from nervousness directly traceable to the accident, which prevented his doing work of a reasonable character. It was held that such was a disabling condition and was compensable under the Workman's Compensation Act, Act No. 20 of 1914, as amended. The court said:
"All of the physicians agree, however, that plaintiff is suffering from nervousness to such an extent that he is totally disabled to do work of a reasonable character, and that the duration of this disability is impossible of determination, thus compelling its being classified as permanent.
"This disabling condition is compensable if there exists a causal connection between it and the accident and injuries sustained by plaintiff on January 10, 1941.
"In Schneider's Workmen's Compensation Law, Volume 1, Section 204a, it is stated: 'Even though an accident may not produce an anatomical pathology, nevertheless if the workman does in fact become disabled as a result of that accident, the injury is compensable, although such disability may be the result of hysteria — and may be traceable to a mental condition and not a physical disorder.'
"The stated rule was followed in Vaughn v. Solvay Process Co., La. App., 176 So. 241, 245, in the opinion of which case the court said: 'While the weight of the evidence supports the conclusion that plaintiff is incapacitated from doing hard manual labor because of the physical injuries to the bones of his hand, the weight of the medical evidence also supports the conclusion that his condition is intensified and exaggerated by his mental attitude. If his physical condition resulting from the injury is of such a nature as to cause traumatic hysteria, making plaintiff believe that he could not work for fear of increasing the pain in the arm, he would still be entitled to compensation.'
"The court expressed the view in Wilkinson v. Dubach Mill Co., Inc., 2 La. App. 249, that where a fall, with the attending shock, caused a hysterical condition, the resulting disability is compensable.
* * * * * *
"The sound cause or good reason for the condition of this plaintiff is the proven back injury that attended the proven accident. Although bone pathology was perhaps not observable, the injury sustained, according to the medical experts, was nevertheless sufficient to bring about the affliction suffered."
With his present employer, Western Union Telegraph Company, plaintiff, in a clerical capacity, earns a higher wage than he received from the defendant. That fact, however, cannot be given consideration in determining this case, because the words "producing permanent total disability to do work of any reasonable character," as used in paragraph (b) of subsection (1) of section 8 of the Employers' Liability Act, Act No. 242 of 1928, p. 357, have been many times interpreted by appellate courts, and the holdings in practically all cases are unanimous to the effect that by giving the words the liberal interpretation to which they are entitled, they mean work of the same or of similar nature. A workman who is unable, by reason of injuries, to return to the occupation in which he was engaged when injured, is entitled to the payment of compensation for total and permanent disability, although he engages himself in other pursuits or employments which are less onerous. See Ranatza v. Higgins Industries, Inc., La. App.,18 So.2d 202.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed. *Page 422