FRUGÉ, Judge.
This is a suit for Workmen’s Compensation Benefits. The plaintiff, Jerome D. Murphy, brought this suit against his employer, Boise Southern Paper Mill, and its workmen’s compensation insurer, Employers Mutual Insurance Company of Warsaw, for maximum compensation benefits.
The plaintiff sought compensation on the ground that he was totally and permanently disabled from performing manual labor as a result of a blow to the head which he received when struck by a large limb which fell from a tree when he was working for his employer as a log cutter. Plaintiff, after the accident, complained of dizziness and headaches and subsequently, sometime after the accident, suffered grand mal epileptic seizures or convulsions.
Following a trial on the merits, the trial court rendered judgment in favor of the plaintiff and against both defendants, finding the plaintiff totally and permanently disabled as a result of an accident which occurred February 26, 1968, within the scope and course of his employment, and the court awarded judgment in favor of the plaintiff against both defendants for compensation benefits at the rate of $35 per week for the duration of his disability, not exceeding 400 weeks. The court ordered the payment of accrued amounts to be made in a lump sum and fixed attorney fees in the amount of $1,000 on the first $5,000 recovered and 10% of the excess over $5,000. Additionally, the court ordered the payment of medical expenses and court costs. From this judgment the defendants, by motion in open court, perfected this suspensive appeal.
It is not disputed that the accident occurred and the plaintiff was injured in the manner described. The plaintiff was dazed and addled by the blow to the head. Following the blow to the head, it became necessary for the plaintiff to leave the job that day. After arriving home, his wife noticed the knot on his head and decided to drive him to the Winnfield General Hospital where x-rays were taken by a Dr. Rogers. Plaintiff returned to work four or five days later, although the testimony indicates that he has continuously complained of headaches and dizziness since the day of the accident.
Prior to the accident, plaintiff had complained of and been treated on numerous occasions for what had been diagnosed as sinus headaches. The defendant has contended that any dizziness and headaches *625 now suffered by the plaintiff are related to disorders previous to the accident and are not causally connected to the accident.
On December 30, 1968, plaintiff suffered what has been diagnosed as a grand mal epileptic seizure. At this time he was treated by Dr. Booker. Dr. Booker subsequently referred the plaintiff to the care of Dr. Roy Buey. The plaintiff was admitted to Schumpert Hospital on January 4, 1969, and given extensive tests including consultation with a neurosurgeon. Prior to trial, the plaintiff had been examined and/or treated by 17 doctors, many of whom were specialists, psychiatrists, and neurosurgeons, and all of whom attempted to pin down the exact cause of the epileptic seizures.
The term idiopathic epilepsy refers to epilepsy for which the cause cannot clinically be demonstrated to the satisfaction of the diagnosing physician. There are numerous known causes for epilepsy, and the term “Jacksonian epilepsy” is used when the diagnosing physician can clinically demonstrate one of the known causes for epilepsy. These known causes include, among others: degenerative brain disease, brain tumor, inheritance, alcoholism, and trauma.
The record reveals that the plaintiff prior to the accident had no previous history of epilepsy and following the accident some several months later, the plaintiff suffered his first epileptic seizure and has suffered at least five epileptic seizures to this date.
Dr. Booker originally diagnosed the plaintiff’s condition as “possible idiopathic epilepsy”. When the doctor later learned of the traumatic accident, he changed his diagnosis to “possible Jacksonian epilepsy”. The term Jacksonian epilepsy includes trauma-induced epilepsy.
None of the doctors who treated or examined the plaintiff, or who testified at the trial of this case, had been able to pin down the exact cause for the seizures. In his written reasons, the trial judge concluded that it was the consensus of the medical testimony that the known causes of epilepsy were ruled out except for trauma. The trial judge stated:
“Many of these doctors in the absence of strong, positive proof, prefer not to make the affirmative statement that trauma absolutely caused the convulsions in this case, but when a study is made of the entire matter, the inevitable result points to the trauma cause.”
The trial judge went on to state that the court was convinced that:
“The plaintiff has proved his case by the preponderance of the evidence that he is suffering from Jacksonian epilepsy precipitated by the injury he received, and that he is also a victim of traumatic neurosis, all of which is totally disabling.”
We note particularly the trial judge’s statements as to his impressions of the testimony of the witnesses and of the plaintiff. In his written reasons, the trial judge stated:
“After observing the plaintiff’s physical appearance during the two-day trial and listening to him testify, I was impressed with the sincerity of his complaints. My initial impressions were strongly reinforced by the expert psychiatric testimony to the effect that this man was not a malingerer (see deposition of Dr. Alvin Cohen and Dr. Marvin F. Miller), as opposed to the opposite conclusion given by Dr. Paul Ware. I was also particularly impressed with the intelligence and apparent sincerity of plaintiff’s wife, who supplied so much of the details surrounding the many trips to the various doctors. All of the lay witnesses gave strong corroboration to the history of continued headaches, dizzy behavior of plaintiff, and the fact of convulsions which plaintiff experienced after the head injury * * *”
*626 The defendant-appellant argues that due to the nebulous character of traumatic neurosis, courts must proceed with utmost caution and scrutinize carefully the evidence in support of such a claim. The appellant cites numerous cases in support of this statement. Mental disabilities can easily be as disabling to a workman, and in many cases more disabling than physical disabilities. As such, they are certainly compensable under our law. Like any other disabling injury, they must be proved by a preponderance of the evidence. In Duncan v. Carlo Ditta, Inc., 170 So.2d 869 (La.App. 4th Cir., 1965), the plaintiff was awarded compensation for what was determined to be a conversion reaction characterized by pain and mental depression. In that case, the court found the plaintiff totally and permanently disabled by his mental disorder and accompanying pain and the plaintiff carried the burden of proving the relationship between the disability and the accident. In Peavy v. Mansfield Hardwood Lumber Company, 40 So.2d 505 (La.App. 2nd Cir., 1949), the plaintiffs mental ailments and disorders were found to disable him from hard manual labor and were traceable causally to a work related accident. In Lala v. American Sugar Refining Company, 38 So.2d 415, 421 (La.App. Orl. 1949), the court in discussing compensation for mental disabilities stated:
“There is no doubt in our minds that nervousness, neurosis, or emotional disturbances, superinduced by injuries suffered by a workman, can be just as devastating to the ability to return to work as are physical or anatomical injuries, and are equally as compensable under the statute.”
The trial court on the basis of all the testimony and witnesses, both medical and lay, found that the plaintiff in fact was suffering from headaches which were not of the nature of the sinus headaches which he suffered previous to the accident, that they were causally related to the blow on the head and that they were to some extent disabling. The court further found that the plaintiff was suffering from dizziness related to the accident. In addition, the court felt that the grand mal epileptic seizures or convulsions which the plaintiff has experienced on numerous occasions, were causally related to the blow to the head that the plaintiff received while in the course and scope of his employment.
The findings of the trial court are amply supported by the record and the testimony contained therein. Thus, we cannot say that these findings are manifestly erroneous and the judgment will be affirmed.
For the above reasons, the judgment of the trial court is affirmed. All costs to be paid by the defendants-appellants.
Affirmed.