On June 5, 1947, plaintiff, Percy Maple, Jr., sustained injuries arising out of and occurring during the course of his employment with defendant, American Sugar Refining Company.
Claiming that as a result he was totally and permanently disabled, Maple brought this suit against the said corporation, praying for judgment for $20 per week for four hundred weeks and for $500 as medical expenses.
Defendant admitted the employment of plaintiff and that on the day in question he had been engaged in unloading sacks of sugar from a boxcar, but it denied that the duties of plaintiff were such as entitled him to the protection of the Workmen's Compensation Act, Act No. 20 of 1914, as amended, and while it did not admit the occurrence of an accident on the day alleged or at any other time, it did admit that plaintiff was examined by defendant's physicians and that he received treatment. It averred that until June 19, 1947, these treatments continued, and that although its doctors did not discharge plaintiff, further treatments were made impossible because of his failure to report to the said doctors. Defendant admitted that the business of refining sugar "is included in the list of hazardous businesses" contained in the Workmen's Compensation Act, but it "specifically denied that plaintiff's duties were in any way hazardous or even connected with the hazardous part of defendant's operations." *Page 610 
Defendant also denied the rate of pay alleged by plaintiff and averred that on the day in question he was employed at a rate which would produce $28.60 for a normal work week, and defendant further denied that plaintiff had "spent any sum whatever for medical treatment."
Defendant, after averring that plaintiff's employment was not hazardous and therefore not contemplated by the provisions of the Workmen's Compensation Act, in the alternative averred that if it should be held that his employment was within the coverage of the statute, that prematurity constituted an absolute bar to the suit. Also in the alternative defendant pleaded that if the claim was not barred as being premature and if the employment of plaintiff is such as is within the contemplation of the compensation act, then "that plaintiff is not wholly or partially, permanently or temporarily, disabled from performing his usual occupation or similar occupations."
There was judgment in favor of plaintiff for $20 per week for fifty weeks with legal interest from the day on which each installment became due and for $200 which was fixed as the expert fees of two medical experts. Both plaintiff and defendant have appealed.
The contention that plaintiff was not brought into contact with any of the hazardous functions of defendant's business and that, therefore, he was not entitled to the protection afforded by the compensation statute was not urged before us.
The real defense was and is that the injuries sustained were not serious and that plaintiff is not disabled and that he is a malingerer.
When the case was about to be argued before us, counsel for defendant filed in this Court a motion to remand the case to afford an opportunity to introduce additional evidence not available at the time of trial below, which counsel say would show that shortly after the completion of the trial below it was discovered that plaintiff was doing laborious work which he could not possibly have done if his condition had been such as was contended for by him. Attached to this motion are affidavits and photographs. The motion to remand is opposed by counsel for plaintiff.
Inasmuch as the court below reached the conclusion that plaintiff is not totally and permanently disabled, we think it best, before considering the motion to remand, to determine whether or not any useful purpose would be served by remanding the matter, even if we should conclude that defendant would be entitled to offer the additional evidence if it were necessary to sustain its defense. In other words, if, after a complete study of the record, we conclude that at the time of the trial below plaintiff was not disabled, then we do not see that any useful purpose would be served by remanding the matter for what would then appear to us to be merely cumulative evidence. We, therefore, shall discuss the record as it is now made up.
The only question presented is a medical one, and after a reading of the record we can well understand the uncertainty of the district judge who, in his reasons for judgment, said that, at the conclusion of the taking of the testimony, he had been uncertain as to whether the plaintiff had sustained the injury for which he complained and that he had, therefore, caused the testimony to be transcribed so that he might read it carefully and that after reading it, he was "still in doubt as to whether plaintiff sustained permanent injuries * * *."
After reading the record we also are in doubt, and we cannot refrain from commenting on the confusion which so often is created in the judicial mind when medical experts, some on one side and some on the other, render opinions which cannot, to any extent at all, be reconciled.
The sole question presented here is whether or not the plaintiff, as the result of being struck on the back by a falling sack of sugar, sustained a rupture of an intervertebral disc. We find as witnesses outstanding medical experts, some of whom are positive that the plaintiff is so afflicted, and others of whom are equally certain that he sustained no such injury and that he is a fraud and a malingerer.
On behalf of the plaintiff Dr. J. A. Colclough, a specialist in neurosurgery, says: "* * * My findings, my clinical diagnosis *Page 611 
was that of a ruptured intervertebral disc."
Asked as to whether he thought that Maple was a malingerer, Dr. Colclough said: "I found this man cooperative in the extreme; I found nothing to make me suspect or think rather that he was exaggerating or malingering. I had occasion to watch this man when he did not know I was looking at him before he even came to my office or knew who I was, and I would frequently see him rub and press on the side of his thigh, so I had no reason to suspect this man or think he was telling me other than the truth."
A little later he said: "* * * I felt he was totally disabled by this condition and suffering a great deal."
Dr. E. H. Maurer, a specialist in orthopedics, when asked for his conclusion as to plaintiff's condition, said: "Present diagnosis ruptured intervertebral disc, fifth disc."
When asked whether this condition was disabling, he answered: "Totally disabling."
On the other hand, Dr. H. Theodore Simon, gave very interesting testimony about his examination of plaintiff. He is an orthopedic surgeon and he says that he made a thorough examination. He stated that he testified from an orthopedic standpoint and that on that basis "he had no disability."
Dr. Felix Planche and Dr. A. V. Filizola both stated that they did not discharge plaintiff as being able to return to work, but that he had merely failed to return for further treatment. And as to whether the accident had caused total permanent disability, both were firmly of the opinion that he had sustained no such injury and that he was and is purely a malingerer. In fact, Dr. Planche went so far as to say that after reading the reports made by the other doctors, even those who had been produced on behalf of plaintiff, he, Dr. Planche, had concluded from those other reports, and independently of his own examination, that plaintiff was not disabled.
Dr. Howard H. Karr, a specialist in neurosurgery, found no evidence, either clinical or radiographic, of ruptured intervertebral disc. He said: "* * * I consider the man to be physically qualified at the time I saw him for the performance of work."
He explained in detail the various tests to which he had subjected plaintiff in an effort to determine whether he was malingering and he says that as a result of these tests he was certain that plaintiff was shamming and that when asked to do certain things: "* * * the patient deliberately and wilfully refused to carry out the maneuvers, stating he did not have the strength to carry out the movements, this contrary to the fact he could bear the full weight on one leg and then the other."
Dr. Karr said he found Maple's general condition "excellent", which he says would have been impossible if he had undergone the pain and suffering which he said resulted from his injury. The doctor concluded with the statement that he had exhausted every diagnostic possibility and had found nothing wrong.
In addition to the testimony of the doctors who were produced as witnesses, we find in the record the reports of the late Dr. Gilbert C. Anderson and of Dr. G. C. Battalora, both unquestionably experts. Neither testified and counsel for defendant complain that their reports should not have been admitted in evidence in view of the fact that neither was produced as a witness. The record shows that when these reports were produced, trial counsel for defendant complained that the doctors should be produced, and while he did not expressly object to the introduction of these reports, it is obvious that his failure to do so resulted from the fact that counsel for plaintiff immediately stated that those doctors would be produced. These reports indicate that those doctors, from the information which they had, were of the opinion that plaintiff had sustained the injury from which he contends he is now suffering. But even if these reports were properly admitted — and it is obvious that they were considered by the district judge — we agree with the district judge that the evidence falls short of showing with any certainty whatsoever that plaintiff is actually suffering from a ruptured intervertebral disc, *Page 612 
or that he was so suffering at the time of the trial below. The best that can be said is that some of the doctors think he is so suffering and many others think that he is not.
When we come to consider the rate of pay at which Maple was employed at the time of the accident, we find that the record shows beyond any question that he was receiving 73 1/2¢ per hour; that the normal week-day was eight hours and the normal work week was forty hours. Thus the compensation to which he was entitled during each week of disability was 65% of $29.40, or $19.11. Franklin v. J. P. Floria Co., La. App., 158 So. 591; Rylander v. T. Smith Son, 177 La. 716, 149 So. 434, affirming La. App., 145 So. 64; Chatman v. Compania De Navegacao, 19 La. App. 616, 140 So. 141; Barr v. United States Gas Public Service Co., 183 La. 873, 165 So. 129; Dawson v. Barber Bros. Contracting Co., Inc., La. App., 195 So. 46; Brown v. Furr, La. App., 19 So.2d 283; Walls v. Solvay Process Co., La. App., 21 So.2d 109.
We are convinced that plaintiff has failed to show that at the time the judgment was rendered below, he had not recovered and could not have returned to work. Just when this recovery was completed we are unable to say, but we feel that at that time he certainly was no longer disabled. Under these circumstances we think that he would be entitled to compensation from the time of the accident, June 5, 1947, until June 7, 1948, with the deduction, however, of those weeks for which he was paid compensation. So far as we can tell from the record he was paid compensation until September 7, 1947. He would, therefore, be entitled to compensation of $19.11 per week from September 7, 1947, until June 7, 1948.
The record shows that on two occasions when defendant sent to plaintiff checks in payment of compensation he failed or refused to execute the receipts which defendant required and that, therefore, after that the defendant required that he call for his compensation checks, which he failed or refused to do. Under the circumstances, defendant was within its rights in demanding that he call for the checks. As a matter of fact paragraph 7, section 8 of the statute, Act No. 120 of 1944, p. 340, provides that payment "shall be paid as near as may be, at the times and places as wages were capable to the injured employee before the accident * * *." And while we have no evidence on the subject we think it fair to assume that the wages were paid at the place of employment. It follows that since these compensation payments were available to plaintiff had he called for them, no interest is due on any of them.
We do not think that the fact that defendant has set up on its books a tentative credit consisting of the compensation payments to which plaintiff would have been entitled had he been successful in this litigation, can be used to create against defendant an estoppel to contend that those payments are not due. Those credits were merely set up on the books as a precaution in the event of an adverse judgment.
Our conclusion is that the judgment should be amended by the reduction of the amount of the weekly payments of compensation to $19.11 each and by the reduction of the time for which they are due to that period between September 7, 1947 and June 7, 1948.
The judgment appealed from is amended to the extent that the weekly payments of compensation are reduced to $19.11 each, without interest, for each week from September 7, 1947 to June 7, 1948. In all other respects the judgment is affirmed.
Amended and affirmed. *Page 613