MOORE et al. v. MARYLAND CAS. CO. et al.

Civ. A. No. 2953.

United States District Court
E. D. Louisiana, New Orleans Division.
April 9, 1952.

John P. Dowling, New Orleans, La., for plaintiffs.

Deutsch, Kerrigan & Stiles, New Orleans, La., for defendant.

Puneky & Barrios, L. Walter Cockfield, New Orleans, La., for third-party defendant.

CHRISTENBERRY, Chief Judge.

This is a workmen's compensation suit growing out of the death of one Matt Watson. Defendants are R. P. Farnsworth & Company, Watson's employer, and Maryland Casualty Company, Farnsworth's insurer. Plaintiffs are Henrietta Moore, as dative tutrix for the minor child Wilbert Richardson, and Maxine Watson, as natural tutrix for her minor children Abigail Maria and Wanda Jean Augusta. The suit was originally brought in the Civil District Court for the Parish of Orleans, Louisiana, and was removed to this Court by the defendants.

The plaintiff Henrietta Moore and Matt Watson began living together on or about January 10, 1927, and although not married they established a common household and held themselves out to be husband and wife. The plaintiff Maxine Watson is the issue of this extra-marital relationship, and the minors Abigail Maria and Wanda Jean Augusta, in whose behalf she here appears, are her illegitimate children. The minor child Wilbert Richardson is the illegitimate son of one Orelia Watson, sister of Matt Watson.

After the suit was removed to this Court, defendants filed a claim for impleader, alleging that many persons claiming to be Watson's dependents and beneficiaries under the Louisiana Workmen's Compensation Act, LSA–R.S. 23:1021 et seq., were asserting claim, and that among these claims was one Celestine Phillips Watson, alleged lawful wife of the deceased Matt Watson. Defendants asked to have Celestine Phillips Watson made a party defendant; to have the Court order the plaintiffs and Celestine Phillips Watson to interplead their respective claims; and to have the Court decide which, if any, of the claimants were entitled to compensation benefits and the amounts thereof.

Celestine Phillips Watson answered, alleging that she was the widow of Matt Watson, and one of his beneficiaries under the Workmen's Compensation Law; that the claims of the minor children, already referred to, were not in conflict with her claim, and that, in the alternative, if there be a conflict of interest, she is entitled to a preference over the minor children. Celestine Phillips Watson contends that under the law she is entitled to recover 32½% of Watson's wages for a period of 300 weeks.

Taking up first the claim of Celestine Phillips Watson, the evidence establishes that she and Matt Watson were separated in March, 1915, and did not live together thereafter, prior to Watson's death; and that, according to her own testimony, at the time of her separation from Watson

she was with child by another man. While she claims that the separation was an amicable one, it is only reasonable to suppose that her pregnancy was the cause of the separation, but be that as it may, she certainly was not a faithful wife, or a wife without fault. The evidence utterly fails to establish that Matt Watson furnished her with any habitual support. The best face that she could put on this was that occasionally Watson would visit her and give her some small change. The only evidence of these occasional small gifts is that furnished by the testimony of Celestine Phillips Watson, herself. There was no corroborating testimony, nor were there any corroborating circumstances. Her testimony was unconvincing, and it seems very doubtful that Matt Watson, a man of small means, gave anything to this woman from whom he was separated for so many years. But assuming that her testimony is true, such gifts fall far short of furnishing proof of even partial dependency. I find, therefore, that Celestine Phillips Watson has failed to establish her claim for compensation, and that it must be accordingly dismissed.

■ With respect to Wilbert Richardson, the evidence shows that Richardson lived in the home of Matt Watson, as a member of the household, and received his entire support from Watson at the time of Watson's death. It is clear that Richardson is entitled to be paid compensation as provided by LSA–R.S. 23:1232(8). The amount to which he is entitled shall be hereafter discussed and determined.

■■ Turning now to the minors Abigail Maria and Wanda Jean Augusta, we find from the evidence that their chief income was and is derived from the Department of Public Welfare. I think, however, that the preponderance of the evidence establishes that Watson did contribute to their support. At a time when the Department of Public Walfare reduced its maximum grants from $58 the amount that the mother and children had been receiving, to $45, the case worker found that the three

required $62.25 per month to live. The record is bare of any direct evidence concerning the amount contributed by Watson. However, save for Watson they had no other source of income, and I am satisfied that he made up the deficiency of $17.25 per month. The question then is the extent of the dependency of the children upon Watson.

It is reasonable and fair to assume that the amount of $17.25 was apportioned equally among the mother and the two children, so that the amount contributed to the two children was two-thirds of the whole, $11.50 per month or $2.66 per week. The percentage of dependency of a partial dependent is based on the employee's contribution in relation to his entire earnings. The pertinent section of the Statute, LSA–R.S. 23:-1231, provides as follows:

"* * *. If the employee leaves legal dependents only partially actually dependent upon his earnings for support at the time of the accident and death, the weekly compensation to be paid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident."

■ Before applying the formula provided by this section of the Statute, it is necessary to ascertain what were Watson's earnings at the time of his death, as contemplated by the Statute. The evidence discloses that Watson, at the time of the accident which resulted in his death, was employed at an hourly rate of $1.10; that 8 hours constituted a working day, and 40 hours a working week. Thus, his weekly wage amounted to $44. That this is the method by which Watson's earnings are to be determined has been well settled by the appellate courts of Louisiana.[1]

Taking the sum of $44 as being the weekly earnings of the deceased, we find that

---

1. Maple v. American Sugar Refining Co., La.App., 1949, 39 So.2d 609; Jones v. Southern Advance Bag and Paper Co., La.App., 1934, 157 So. 754; Rylander v. T. Smith & Son, Inc., 1933, 177 La. 716, 149 So. 434.

the amount of $2.66 per week contributed by Watson to the two children constitutes 6% of such earnings. The two minor children and Wilbert Richardson are all beneficiaries of the same class. They are covered by the second portion of LSA–R.S. 23:1232(8), which reads as follows:

" * * *. If other dependents than those enumerated, thirty-two and one-half per centum of wages for one, and eleven per centum additional for each such dependent in excess of one, subject to a maximum of sixty-five per centum of wages for all, regardless of the number of dependents."

If all three were wholly dependent, there is no question but that properly to allocate the benefits between them, it would be necessary to add together 32½%, 11%, and 11%, and to divide the sum, 54½%, by three, and award to each 18⅙% of Watson's earnings per week.[2]

■ However, only Wilbert Richardson was wholly dependent upon the employee, and the Act, LSA–R.S. 23:1252, provides that if there are sufficient persons wholly dependent to take up the maximum compensation, the death benefit shall be divided equally among them, and persons partially dependent, if any, shall receive no part thereof. The Supreme Court of Louisiana has construed the Statute as intending to favor those persons wholly dependent over those only partially dependent, by providing benefits for the latter only after the former have received their full specified portions.[3] Accordingly, since there is only one wholly dependent person here, namely Wilbert Richardson, and since he is entitled to receive his full portion, he must be awarded 32½% of $44 per week, or $14.30 per week, until he reaches the age of 18 years.

■ Coming back now to the two children, to ascertain the amount due to each of them it is necessary to apply the formula set out in LSA–R.S. 23:1231, already referred to. To do this, it is necessary first to determine the amount which each child would be entitled to receive if she had been wholly dependent upon the employee. Assuming that to be the case, there would be three persons in their class, the two children and Wilbert Richardon. Each of the three beneficiaries would have been entitled to receive weekly payments of 18⅙% of Watson's weekly earnings, which would make the share of the two children together 36⅓% of Watson's weekly earnings. But the children were dependent only to the extent of 6%, and they are, therefore, entitled to receive 6% of 36⅓%, or 2.18%, of Watson's weekly earnings. This amounts to 96 cents per week for the two or 48 cents per week, each.

However, when Wilbert Richardson reaches the age of 18 and is no longer entitled to compensation, the two children will remain as the only beneficiaries. The method to be pursued in determining the amount to which they will then be entitled is to add 32½% and 11%, and the sum, 43½%, would be the percentage of earnings to which two wholly dependent beneficiaries would be entitled. Since the two children were dependent only to the extent of 6%, they are entitled to 6% of 43½%, or 2.61%. We then find that 2.61% of the weekly earnings of $44 is $1.15, which must be divided equally between the two, so that each will receive 58 cents per week from the time that Wilbert Richardson reaches the age of 18, until such time as 300 weeks shall have elapsed from the date of Watson's death.

■ The Compensation Law, LSA–R.S. 23:1202, establishes maximum benefits of $30 per week and minimum of $3 per week, and counsel for the children contends that they are entitled to such minimum. In the Archibald case, supra, the Court interpreted this section of the law to mean that the total compensation to be paid by the employer, regardless of the number of dependents, cannot be less than $3 per week. In view of the clear language of the Statute, this seems to be the only reasonable interpretation that could be placed on it. Here, the aggregate to be paid by the employer is very much in excess of the

2. Archibald v. Employers Liability Assurance Corporation, La.App., 1945, 20 So.2d 178.

3. Patin v. T. L. James & Company, 1951, 218 La. 949, 51 So.2d 586.

minimum established by the Statute, and consequently the children are not entitled to further compensation. Counsel for the children relies upon Patin v. T. L. James & Co., supra. In that case, the Court allowed a partially dependent mother the minimum of $3 per week despite the fact that benefits awarded another dependent exceeded the minimum of $3 fixed by the Statute. However, in that case, the question was not squarely presented, the Court said that the mother was admittedly only partially dependent, and that the award of $3 per week was being made because of the lack of evidence to establish the extent of the employee's contributions to her. I do not think that the case is authority for what counsel here seeks.

A decree may be presented in accordance with this opinion.