## STANFORD v. LONG & WOLFE.

### No. 2168.

Court of Appeal of Louisiana, First Circuit.

Jan. 14, 1941.

W. C. Perrault, of Baton Rouge, for appellant.

John M. Hester, of Oak Grove, for appellee.

DORE, Judge.

Plaintiff brings this action for compensation for alleged total disability resulting from an accident sustained by him on March 16, 1938, in the course of his employment by defendant, a Texas partnership doing business in Louisiana, and as a result of such employment.

It is shown that plaintiff was engaged on a drilling rig in St. Landry Parish in his duties as oil field "roughneck" on March 16, 1938, when a chain came off of its sprocket and suddenly recoiled and hit the top of his left foot, cutting through his leather boot and crushing and cutting his foot in the region of the second, third and fourth toes of the left foot for about three inches into the body of the foot, and resulting in a fracture of the second phalanx of the second toe with a complete separation and no calcification and an atrophy of the joint of the first and second phalanx; and fracture of the third toe in the shaft of the first phalanx with complete ossification and with ankylosis of the first and second joints, and a similar fracture of the fourth toe with ossification and partial ankylosis. Plaintiff avers that when the wound healed his foot remained in a plaster cast for some time and scar tissue formed between the second and third toes, producing a painful condition on the ball of the left foot. He claims that this injury caused him to have to walk on the side of his foot; that as a result he suffered intense pain when he attempted to walk or to do hard work and that he is unable to follow his usual occupation; that prior to the accident he was a healthy and normal man, but is now permanently and totally disabled; that at the time of his injury he was receiving $49 per week, and is therefore entitled to the maximum compensation of $20 per week for a period not exceeding 400 weeks, beginning March 16, 1938, with legal interest on past due instalments, plus an additional sum of $250 for medical expenses, less a credit of $150 paid by defendant prior to

the filing of the suit as compensation and less $138 paid as medical expenses.

In its original answer the defendant admits that it is an ordinary partnership of Texas; that plaintiff was employed by it and was injured on March 16, 1938, on an oil well in St. Landry Parish; but it denies plaintiff's allegations as to the extent of his injury, or that he is permanently and totally disabled. It avers further that the amounts of compensation and medical expenses heretofore paid by it are $200 for compensation and $202.40 for medical services, instead of the amounts set forth by plaintiff.

Later the defendant filed a supplemental and amended answer stating that, since the previous answer was filed, the defendant had agreed to resume payment of compensation to the plaintiff and to provide additional medical services. On February 28, 1939, Dr. Tisdale performed an operation on plaintiff's foot, removing the scar tissue and the third toe. The plaintiff was discharged by Dr. Tisdale on May 7, 1939, but still complained of pain in his foot. Upon examination by Dr. Snelling he found that the foot was apparently still sensitive as a result of the operation and recommended an additional eight weeks of rest. Consequently plaintiff was finally discharged on July 24, 1939, and according to the itemized statement attached to the record was paid compensation up to that date in the sum of $1,387.50, and was paid medical expenses in the sum of $314.10, and it appears further that the defendant paid the sum of $19.75 covering the costs of suit to that date.

The sole question presented in the case is whether or not the plaintiff has been totally disabled from performing reasonable services, in his usual occupation, since July 24, 1939.

On the trial of that issue the district court rendered judgment in favor of plaintiff for compensation at the rate of $20 per week for a period of 400 weeks, with legal interest on past due instalments, less a credit for the amount of compensation already paid. He also allowed one of the physicians who testified for plaintiff the sum of $100 as an expert witness fee, and allowed another physician who testified for plaintiff the sum of $25 as his fee. The defendant has appealed from this decision.

As to whether or not plaintiff has been disabled from performing the services of a "roughneck" from July 24, 1939, the principal testimony is that of Drs. Tisdale and Durham, who testified for plaintiff, and Drs. Snelling and Bienvenu, who testified for defendant.

The latter two physicians testified positively that the plaintiff suffers no disability preventing him from performing his customary duties; that the use of his foot depends entirely on the condition of his large toe and the tripod of the foot, both of which were in normal condition from on or before July 24, 1939.

Dr. Durham, an orthopedic surgeon, testified that the third metatarsal bone is being pinched by the adjacent metatarsal heads; that the distal end of the fourth metatarsal is abnormally enlarged and that there is an upward displacement of the third metatarsal and a downward displacement of the fourth metatarsal, the effect of which is to place too much pressure on the fourth metatarsal bone; that this condition resulted from the operation, which he thinks was not properly performed because the third toe should not have been disarticulated at the metatarsal joint, but a part of the metatarsal head should have been removed as well. It does not appear that any of the other three physicians who testified in the case agrees with Dr. Durham, and, as a matter of fact, they all state that the operation was completely successful, and there remains no physical impairment or abnormality of the remaining toes.

We note that Dr. Tisdale had plaintiff under observation longer than any of the other physicians, and that he testified as a witness called by the plaintiff himself. His testimony is to the effect that the operation performed by him was entirely satisfactory and that the plaintiff should be capable of performing his former duties except for subjective symptoms. The subjective symptoms, of course, are the statements of the plaintiff himself which relate to the pain in his foot and which he says makes him afraid to put his weight on it. The preponderance of all the medical testimony, including that of Dr. Tisdale, is that there are no objective signs or symptoms to indicate that plaintiff cannot use his foot in the usual and normal condition that any person would and our impression of the conclusion reached on that point is that he does not so use it because he wills not to do so. Some of the doctors state that he may experience some sort

of fear of pain which apparently they cannot account for. Whilst the compensation law will permit an injured employee to recover for an injury which produced traumatic hysteria, as was held by this court in the case of Vaughn v. Solvay Process Co., 176 So. 241, the evidence should be more convincing than it is in this case; that there should be a sound cause and good reason for the mental condition which superinduces a fear of pain in the individual strong enough to render him totally disabled. No such cause or reason is shown to exist in this case. It is to be noted, moreover, that in the Vaughn Case, the disability was not based entirely on the condition of hysteria, but we were of the opinion also that the preponderance of the evidence justified the conclusion that the injured employee had a sufficient injury and abnormality of the bones in his wrist to impair its movement and to cause pain when movement was attempted.

The only testimony we find in the record, aside from that of plaintiff and the physicians, is that of lay witnesses who do not seem to testify definitely with reference to plaintiff's condition subsequent to July 24, 1939.

In this case our finding is that the preponderance of the medical testimony is to the effect that plaintiff had recovered sufficiently from his injury on July 24, 1939 to resume his duties as an oil field "roughneck". We are much impressed by the cooperation shown in this case by the defendant, both in paying compensation, and in securing medical assistance for its former employee to every reasonable extent, and we feel that the lower court erred, on the evidence in the record, in placing a further burden on this defendant by granting an award based, in our opinion, on a mere possibility or probability, and not on a legal certainty, that plaintiff has been permanently disabled subsequent to July 24, 1939. It is true that the lower court stated in his judgment that he had personally observed the plaintiff, yet we do not find from the record that he has given us the direct result of his observation, such as the dictation in the record of his findings in the presence of the parties litigant, to which either party would have had the right to show otherwise, and hence we must base our conclusion on the testimony, especially the medical testimony, as we find it in the record, and not on the trial judge's comment as to his observation.

For the reasons set forth above, we are of the opinion that the plaintiff has failed to prove to the legal certainty required that he is now or has been since July 24, 1939, disabled from engaging in his usual occupation, and we must therefore order that the judgment of the lower court be reversed.

The judgment appealed from is therefore annulled, avoided and reversed and plaintiff's suit dismissed.