Plaintiff sues for compensation for total permanent disability based on $20 per week for a period not exceeding 400 weeks plus medical expenses of $250, resulting from an accident on April 26, 1943, when a piece of lumber fell from a building a *Page 110 
distance of 60 to 80 feet and struck plaintiff on his left foot while he was in the employ of defendant. There are only two issues in the case; viz., the extent of the injury, and the weekly wage on which compensation should be based. The defendant admits that plaintiff suffered an injury to his foot, and tendered him compensation on the day of the trial the sum of $91 as compensation for seven weeks at $13 per week which defendant contends covers all compensation which might be due plaintiff. The latter refused the tender and claims compensation on the basis of 65 per cent of his weekly wage for a 60 hour week at 50 cents per hour for the first 40 hours and time and a half, 75 cents per hour, for the overtime of 20 hours per week. Defendant claims that compensation should be based on a 40 hour week at 50 cents per hour, or 65 per cent of $20 per week; viz., $13 per week.
[1] The trial judge rendered a judgment in favor of plaintiff for the maximum compensation of $20 per week for a period not exceeding 400 weeks, and denied the claim for medical expenses. Defendant appealed, and plaintiff asks in brief that his medical expenses be allowed. As plaintiff did not appeal or answer the appeal, we cannot consider the question of medical expenses.
Immediately after plaintiff was injured by the timber falling on his foot he was taken to the first aid hospital and then taken to Dr. McHugh, the defendant's physician. This doctor examined him and found swelling over the area of his foot where the timber had struck it. The doctor made an x-ray of the foot and found hypertrophic arthritis, and marked flat-feet, the left being more flat than the right. The doctor was of the opinion on the first examination that there was an incomplete fracture of the astragalus of plaintiff's left foot, but on examining pictures made a month or two later by Dr. Williams, he concluded that there was no fracture but that the cleft on the astragalus shown in his first picture was part of the arthritic condition of plaintiff's foot. The doctor saw plaintiff just before the trial in December, 1943, and found at that time some limitation of motion in the left foot. The doctor was of the opinion that plaintiff did have a contusion of the dorsum of his left foot from which he thought plaintiff had recovered in December, 1943; that plaintiff's great weight (around 300 pounds) has contributed to his flat feet.
Dr. McHugh admits that a trauma might make an arthritic condition become symptomatic. He states that if plaintiff's foot is stiff it could result from the arthritis or from non use.
Dr. Moore, an osteopathic physician, treated plaintiff's foot from June to December, 1943, during which time he saw him eighteen times. This doctor testified that when plaintiff first came to see him in June his left foot was swollen to about twice the normal size, very sore, painful to the touch and stiff. He thought there were some fractures in the foot; the arch was broken down, more than a flat foot. There was no swelling, soreness or inflammation in the right foot which was normal, other than being flat. At the time of the trial the doctor stated that the swelling in the left foot had gone down some and the tenderness had almost gone, but the foot was rigid and had little motion in it. The doctor stated that plaintiff could not do any kind of manual labor requiring much standing or walking. He was of the opinion that the disability is likely to be permanent. The doctor expressed the opinion that whatever arthritis plaintiff had in his foot was quiescent until the accident.
Dr. Godfrey examined plaintiff twice and his opinion is summed up in the following quotation from his testimony:
"I think that his disability entered into a number of things. It is due primarily to his arthritis, which I think was caused originally by his obesity, and on top of his arthritis was added pain and soreness of a trauma. In other words, I do think that before the accident he was able to get by and that for some time after the accident, due to pain caused by the accident, he was not able to get by, which would put that part of it directly into the lap of the accident."
Dr. Godfrey expressed the opinion that disability does exist in plaintiff's foot and that he is truthful when he says that pain and discomfort exist.
Dr. Kern, who examined plaintiff some five times between June and December, 1943, was of the opinion that plaintiff had arthritis in feet over a long period of time, but that the injury aggravated the condition in his left foot to the extent that he has a permanent disability of the foot; *Page 111 
that plaintiff is absolutely unable to do hard manual labor.
The plaintiff testified that he never laid off from Work before the accident; that he never had any trouble with his foot before; that, since the accident, his foot has swollen and gives him pain when he walks or tries to stand on it.
[2] The preponderance of the medical testimony is to the effect that, while plaintiff had arthritis in his foot before the accident, the injury aggravated the condition to such an extent that he is disabled from doing hard manual labor, the only kind of work he has ever done. While the medical testimony indicates that his condition could be improved by proper treatment, yet there is no indication of any definite time in which his disability would be relieved. Under these circumstances, the trial judge was correct in finding him totally and permanently disabled.
On the question of the weekly wage, plaintiff testified that he was working in the clean up crew and worked from eleven o'clock in the morning to ten o'clock at night, with time out for lunch; that he worked ten hours per day and the crew worked six days per week; that he was getting 50 cents per hour and got time and a half for more than 40 hours per week. A co-employee of plaintiff testified that he was in the same crew as plaintiff and they were working ten hours a day and six days a week, at 50 cents per hour for an eight hour day, and time and a half for overtime.
The man who keeps the pay roll for the defendant company testified that plaintiff was employed at the rate of fifty cents per hour, basic week of forty hours; that if he worked over 40 hours per week he was paid 75 cents per hour for the overtime. He also stated that the men in the crew in which plaintiff was working were working a ten hour day at the time for a six day week. From the time plaintiff began working for defendant on March 19th to the date of his injury on April 26th, he worked over forty hours for two weeks, but he did not work as much as sixty hours in any one week. In fact, his work was very irregular during the period.
[3-5] The compensation of an injured employee is based on the daily rate of pay at which the services of the employee are recompensed at the time of the injury, but the compensation is to be paid on a weekly basis. Rylander v. Smith Son, Inc.,177 La. 716, 149 So. 434. The daily rate of pay of plaintiff was based on 50 cents per hour for eight hours and 75 cents per hour for the additional two hours that he and the other members of his crew were employed to work. Unless there was some special agreement in the contract of hiring the number of days to be counted in a normal week is six, regardless of whether or not the employee works regularly for the full ten hours or the full six days. Ricks v. Crowell Spencer Lumber Co., La. App., 189 So. 466; Ogea v. W. Horace Williams Co., La. App., 165 So. 345. The defendant in this case has failed to show that there was a contract of hiring with the plaintiff for less than a six day week.
For the reasons assigned, the judgment appealed from is hereby affirmed at the cost of the defendant in both courts.