Alleging permanent total disability to do work of any reasonable character, as the effect of an accident experienced by him on September 11, 1945, while performing the duties of a contract of hiring with W. B. Nelson, independent contractor of the Mansfield Hardwood Lumber Company, plaintiff sued both parties to recover compensation at the rate of $20 per week for four hundred weeks, less four payments of $10.50 each. By an amended petition he alleged payments of compensation had been made to him to November 2, 1945.
The facts of the accident are not disputed. Plaintiff when injured was thirty-four *Page 506 
years old and was engaged in arranging logs that had been deposited upon a stationary truck. To do this he was using what is commonly known and referred to as a cant hook. Considerable physical effort is necessary, with the use of this implement, to move a log from one place to another. The hook, in one instance, failed to catch sufficiently deep into a log to withstand the physical force plaintiff applied to it, and it slipped from its hold. He lost balance and fell upon the ground, a distance of some eight or ten feet. He landed on his head and left side. A slight concussion rendered him unconscious for a brief time. He alleged that from the fall he sustained serious and permanent injuries to his back, spine, head and nerves, the ultimate and composite result of which is that he, at the time of and prior to filing suit, was and is now afflicted with psychoneurosis of such serious character as to produce the disability alleged upon.
Defendants, in limine, filed a plea of prescription of one year which does not appear to have been ruled upon. It is not now urged and presumably has been abandoned.
Answering, the defendants plead that the injuries received by plaintiff when he fell from the truck were not serious; that on October 19, 1945, he had fully recovered therefrom, and has been paid more compensation than was justly due him; that at the present time he is not disabled to do the work he was engaged in when hurt. This position is based upon the premise that on October 24, 1945, plaintiff, at defendants' instance, was examined by competent physicians in the City of Shreveport, Louisiana, who were not able to find any injury or traumatic disorder of his nervous system.
There was judgment for plaintiff as by him prayed. The defendants appealed.
When the accident occurred, Nelson was not far away (in the woods) loading another truck. Loading of plaintiff's truck was completed and evidently thinking it was not safe to allow him in his injured condition, to make the tedious drive to the highway, some two miles away, Nelson did this for him. From that point plaintiff drove the loaded truck to a mill where the logs were unloaded.
Plaintiff did not report for duty the morning following the accident. Nelson came to his home and finding him unable to resume work and complaining of serious pain and other symptoms, had Mrs. Nelson drive him to Alexandria to consult Dr. Hardy, the company's employed physician. Dr. Hardy physically examined plaintiff and had X-rays made of those portions of his body from which pain emanated. He found no objective symptoms and the X-ray pictures were negative as to bone pathology. Plaintiff was at the time complaining of severe pain in the left side of his chest, neck and left shoulder. The doctor prescribed sedatives for the relief of the pain, rest, and hot applications for the chest, neck and shoulder. Plaintiff returned to him for observation and examination three or four times. It was Dr. Hardy's opinion that plaintiff's injuries were rather trivial and he advised him to return to work. He did not think plaintiff was suffering from psychoneurosis and expressed serious doubt that such an ailment can be the result of trauma. All the other doctors who testified in the case disagree with him in this opinion. However, Dr. Hardy makes no special claim to ability to judge cases of this character.
Plaintiff returned to work for Nelson on October 17th, worked that day and the two following days. He testified that because of physical weakness he was unable to do the lifting and straining necessary to the performance of the work assigned to him. He also stated that Nelson discharged him at this time. Plaintiff's testimony in these respects is not contradicted by any one; not even by Nelson, as he did not take the witness stand.
The above related action by plaintiff and his constant assertions of pain and inability to carry on his usual work, evidently impressed defendants as they immediately arranged to have him examined and his condition diagnosed by Drs. M. S. LeDoux and D. H. Duncan, of Shreveport, Louisiana, the latter being an outstanding specialist in neurology and psychiatry. Each of *Page 507 
these doctors examined him on October 24, 1945, and again on April 29, 1947. Neither found plaintiff to be suffering from traumatic organic disorder, nor did they find any objective evidence of traumatism. X-ray pictures revealed no bone injury. Of course, such pictures do not disclose muscular or tissue injury.
When first examined by Dr. LeDoux, plaintiff complained of pain, numbness, drawing from his waist up and abnormal sensations in the head. Being unable to confirm the existence of cause for these complaints, Dr. LeDoux referred the patient to Dr. Duncan for neurological examination in the hope of clarifying the situation. Dr. LeDoux found plaintiff to be thin, apparently undernourished and nervous. He thought he could do some kinds of work but was certain he was not able to load and unload logs as he had previously done. The most significant opinion rendered by Dr. LeDoux is reflected from the following excerpt from his testimony, to wit: "I could not find any objective signs of disturbance that would keep him from working, assuming that his neurological examination did not reveal signs of nerve injury, or things of that kind."
Dr. Duncan engaged in a very lengthy and enlightening discussion of psychoneurosis, its causes, effects and duration, but candidly confessed that he had not had adequate time and opportunity to definitely determine the cause of the psychoneurosis he found to beset plaintiff. He was of the opinion that plaintiff's general condition had not improved any between the times he examined him, but, on the contrary, he had lost ground. The following extract from Dr. Duncan's testimony throws light upon this rather delusive illness, to wit: "The difficulties which an individual encounters obviously play their part in precipitating the illness. In certain individuals it is an injury, or fear of incapacity, or loss of occupation, financial need, conscious or unconscious hope of money, the fear of not being taken care of in a physical disability — all of these things may play their part in varying degrees in different people in developing psychoneurotic conditions, and certainly, in my mind, it would take more than just a couple of periods of examination to definitely pin down anyone cause psychiatrically for this particular man's disability. We know, from these reports, that the symptoms and complaints which he gave have not been found to be related to organic disease."
Dr. Duncan's interpretation of plaintiff's physical and mental condition warranted the opinion, as by him expressed, that he could not perform laborious work. The doctor stated that relief from the anxiety and uncertainty of the outcome of this suit would go far toward improving plaintiff's mental condition. However, he made it clear that he did not believe plaintiff was intentionally malingering, and was clear in the opinion that his present mental and physical condition could be the result of worry and anxiety following developments superinduced by the effects of the accident.
After being examined in Shreveport the first time and realizing that his condition was not improving, plaintiff consulted Dr. J. J. Young of the City of Natchitoches, Louisiana, who prescribed and treated him until the early part of January, 1946. To that time he had lost over twenty pounds in weight, part of which was regained while under Dr. Young's treatment. His financial inability to pay Dr. Young for his services and the cost of medicine prompted the doctor to advise him to go to the Charity Hospital in New Orleans for further treatment. He did not do this but did consult Dr. M. L. Magruder of Alexandria, Louisiana, who began treating him on January 8, 1946, and continued to do so until the date of trial, a period of nearly two years. Plaintiff's weight was one hundred thirty pounds when he first consulted Dr. Magruder. His normal weight is from one hundred forty pounds to one hundred forty-five pounds.
Dr. Magruder has not specialized in neurotics nor psychiatry, but has had considerable practical experience in treating persons afflicted with such maladies. He is, however, in a better position to diagnose and interpret plaintiff's case than was any other physician who examined him. He diagnosed the case as being post traumatic *Page 508 
neurosis, a direct result of the accident, and was certain that since he began treating plaintiff he has not been physically able to do hard work of any character.
He gave the following as some of the symptoms present in plaintiff's case, to wit: "Extreme anxiety, appreciable depression, worry, some mental confusion, headaches, nightmares, fatigue, loss of appetite, emotional upset, loss of sexual emotions, some irritability, some tremulous difficulties."
He further stated that these symptoms marked the neurotic. Dr. Magruder is of the opinion that plaintiff will never fully recover from his present illness.
At the request of plaintiff's counsel, on March 14, 1946, Drs. Texada and Miller of the City of Alexandria, Louisiana, made physical examination of him. These doctors found plaintiff to possess an apathetic expression, nervousness, and an agitated mental state which could easily have been precipitated by the accident, the worry and anxiety that ensued, and which has relentlessly beset him all along. These physicians diagnosed the case as being psychoneurosis.
All of the several doctors who examined plaintiff, after he tried to resume work in October following the date of the accident, were positive in the opinion that he was not intentionally malingering and all of these doctors gave the opinion that he was disabled to do heavy work, especially the kind he was following when hurt. All agree that his condition reflected many symptoms that were not, in whole or part, usually seen in a normal person, and all agree that it does not necessarily require a serious and permanent physical injury to bring about a psychoneurotic condition in the individual. In like manner they concur in the opinion that the accident in this case was ample in its shock and severity to account for the conditions that are manifest in plaintiff.
An array of plaintiff's friends testified in his behalf. All of them knew him to be an active man, a good workman, and of a jovial, cheerful disposition up to the time of the accident, but since then, they all agree, he has become morose, depressed and no longer evinces interest in things that formerly attracted his interest and attention. They are to one accord in saying that his body, once erect, is now stooped; that he was formerly able to perform heavy manual labor, but cannot now do so; that he has not engaged in gainful work since being injured.
Plaintiff and his wife testified that beginning immediately after the accident and to the time of trial, he had been unable to sleep at night except from the effect of sedatives; and that he suffered bodily pain and was highly restless.
The rule in a case of this character is well expressed in Schneider's Workmen's Compensation Law, Volume 1, § 204(a), page 609, as follows: "Even though an accident may not produce an anatomical pathology, nevertheless if the workman does in fact become disabled as a result of that accident, the injury is compensable, although such disability may be the result of hysteria — and may be traceable to a mental condition and not a physical disorder."
The issues involved in the present case are not new in the jurisprudence of this state. The recent cases of Vaughn v. Solvay Process Company, La. App., 176 So. 241; Porter v. W. Horace Williams Company, et al., La. App., 9 So.2d 60, and Lala v. American Sugar Refining Company, La. App., 38 So.2d 415, are very much in point. In each case the plaintiff succeeded. The first case involving said issues, so far as our research reveals, is that of Wilkinson v. Dubach Mill Company, Inc., 2 La. App. 249.
The present case tenders solely questions of fact. They are: Is plaintiff disabled to do heavy manual labor, and, if so, is such disability the result of the accident, and has it direct causal connection therewith? The lower court answered both of these questions in the affirmative. A diligent study of the testimony has not led us to different conclusions.
It is admitted that payments of compensation were made to plaintiff until November 2, 1945. The judgment does not give credit for these payments. It fixed September 11, 1945, as the date for the *Page 509 
commencement of weekly payments thereunder, and to continue during disability, not to exceed four hundred weeks. It will have to be amended so as to allow said credits.
For the reasons herein assigned, the judgment from which appealed is amended by crediting defendants with payments of compensation to November 2, 1945, and, as thus amended, the judgment from which appealed is affirmed. Plaintiff is cast for cost of appeal. Other costs shall be paid by the defendants.