86 So.2d 698 (1956)
Adolphus TATE, Plaintiff-Appellant,
v.
GULLETT GIN COMPANY & Liberty Mutual Ins. Co., Defendants-Appellees.
No. 4168.
Court of Appeal of Louisiana, First Circuit.
March 20, 1956.
Rehearing Denied April 27, 1956.
Writ of Certiorari Denied June 11, 1956.
*699 Edgar Corey, New Orleans, Iddo Pittman, Jr., Hammond, for appellant.
Ponder & Ponder, Amite, for appellee.
TATE, Judge.
This is a workmen's compensation suit. The chief issue is whether plaintiff is disabled by traumatic neurosis. Appeal is taken from judgment dismissing plaintiff's suit.
Plaintiff Tate allegedly wrenched his back at work while lifting a 370-lb gin brush, on or about September 22, 1953. He continued working until September 28th, according to his testimony with increasing pain. He is somewhat corroborated by a co-employee, Hart, who while denying Tate's informing him immediately after the accident, admitted Tate told him of same 2 or 3 days later and was walking "sort of stiff-backed". On September 28th he reported his need of medical attention to his foreman, and was sent to Dr. R. W. Osborn, who found a mild lumbosacral strain for which Tate was treated for about 10 days and discharged on October 7th as cured.[1]
Although defendants contend no accident was proven, the testimony of the employee corroborated by surrounding circumstances preponderantly proves the initial accident, see Zito v. Standard Accident Insurance Company, La.App. 1 Cir., 76 So.2d 25, Dolhonde v. Gullett Gin Co., La.App. 1 Cir., 25 So.2d 104. It may be noted that Tate consistently repeated from the beginning this history of a wrenching back injury, nor did the District Court find an accident did not occur.
The serious question for our determination is whether there is any residual disability resulting from what concededly was not a serious injury.
The testimony of Dr. Osborn and of Dr. R. H. Alldredge, orthopedist, support the District Court's finding that as of the trial there was no residual physical or functional disability at the time of the trial, despite plaintiff's contention that the hypertrophic fringes about the bodies of the lumbar vertebrae shown by x-ray represent an aggravation of a dormant osteo-arthritic *700 condition into a painful one. According to Dr. Alldredge, such formations properly speaking were not a disabling osteo-arthritis, but a non-disabling osteo-phytosis which probably antedated the back strain by several years.
Plaintiff's initial petition filed December 19, 1953, alleged disability resulting only from "lumbo-sacral sprain, aggravation of an arthritic condition of the lumbar vertebrae." By amended petition filed April 8, 1954, plaintiff further supplemented his claim of disability as resulting from "post-traumatic neurosis". Defendant's argument that said amended and supplemental petition could not be filed (after its answer and the initial fixing for trial) as changing the nature of the demand, overlooks the statutory provision that in compensation suits "the court may in its discretion * * * allow amendments of the petition and answer at any stage of the proceedings", LSA-R.S. 23:1315; Osborne v. McWilliams Dredging Co., 189 La. 670, 180 So. 481, Clark v. Employers' Liability Assurance Corp., La.App. 1 Cir., 27 So.2d 464. "Amendments are permissible at any stage of such a case, even in the Supreme Court", Mitchell v. Sklar, La.App., 196 So. 392, 394. The District Court properly allowed filing of the amended and supplemental petition.
Concerning the disability resulting from traumatic neurosis or hysteria, there are two depositions from medical expert psychiatrists in the record, that of Dr. H. R. Unsworth, offered on behalf of plaintiff, and that of Dr. David Freedman, offered by defendant.
Defendant objected to admissibility of the former deposition taken by oral examination for several reasons. Its contention that the testimony of this apparently well qualified psychiatrist should be totally disregarded because of a critical view expressed by our brethren of the Orleans Court as to his attitude toward the case then in question, Ladner v. Higgins, La.App., 71 So.2d 242, is unsupported by any citation of legal authority or reason.
Further, we see as little merit in its contention that counsel for defendant was relieved from attending the deposition on April 19, 1954, pursuant to notice received by it on April 9, 1954, as provided by LSA-R.S. 13:3761, by an order to show cause obtained by defendant on April 17, 1954, returnable on April 30, 1954, "why supplemental petition should not be stricken from the record, and why any testimony taken April 19, 1954, under the discovery rules of practice should not be excluded from the record." This is not by its terms such an order whereby a court may "for cause shown enlarge or shorten the time", LSA-R.S. 13:3761, or may "upon motion seasonably made * * * upon notice and for good cause shown * * * order that the deposition shall not be taken," LSA-R.S. 13:3762.
However, defendant correctly urges that the deposition of Dr. Unsworth offered by plaintiff, sworn to and taken before plaintiff's attorney, was not admissible since: "Depositions shall be taken before an officer authorized to administer oaths, who is not an employee or attorney of any of the parties or otherwise interested in the outcome of the case", LSA-R.S. 13:3743. (Italics ours.) For defendant did not agree to the deposition to be taken before such officer, LSA-R.S. 13:3741, nor waive by failing to object to such disqualification "before the taking of the deposition", LSA-R.S. 13:3744, subd. B since counsel for defendant failed to appear at such time. It therefore appears that the objection was timely made "as soon thereafter as the disqualification becomes known or could be discovered with reasonable diligence." LSA-R.S. 13:3744, subd. B.
For this reason, we are unable to consider the deposition of Dr. H. R. Unsworth and must sustain the objection of defendant to its admissibility.
Defendant took the deposition of Dr. David A. Freedman, psychiatrist and neurologist, and Dr. Rufus H. Alldredge, orthopedist above discussed, by written interrogatories after trial, reserving his right to do so at the end of the trial. Counsel for *701 plaintiff objected to the motion to issue a commission to take written interrogatories as no longer authorized since the specific repeal of Code of Practice Articles 425-440 by the Louisiana Depositions and Discovery Act, Act 202 of 1954, Section 2, LSA-R.S. 13:3741 et seq. Reserving its rights, however, plaintiff filed cross interrogatories. All of these interrogatories and cross interrogatories were duly answered before the Notary to whom the commission and interrogatories were sent.
Although indeed the procedure utilized appears to have been that formerly required by the repealed codal articles, we fail to see how plaintiff was prejudiced, since the substantial requirements of the less cumbersome procedure of the new Depositions Act for depositions by written interrogatories were met, see LSA-R.S. 13:3771, 3772.
The deposition of Dr. David Freedman is therefore properly before us and was properly considered by the District Court. As to this testimony, the District Court simply observed: "The testimony of Dr. Freedman, a neurologist and psychiatrist, is that the man did not have any post traumatic neurosis."
Because we believe that the very able District Court reached an erroneous conclusion concerning Tate's neurotic disability largely attributable to overlooking the full content of Dr. Freedman's deposition, filed long after the closing of the trial, we are setting forth at some length excerpts therefrom:
"A. I was not asked to see Mr. Tate from the standpoint of his physical problem. I was asked to evaluate him from a psychiatric standpoint and I did not perform a physical examination. (Tr-5)

* * * * * *
"A. I did not examine this man from the standpoint of post traumatic neurosis. I found him to be in manner a pleasant and cooperative man. He gave me the appearance and history of a steady, sober, hard-working individual who had worked for this company for many years, because he had a very strong sense of duty and was imbued with the feeling that unless he worked hard he would lose all support and all security; that he displayed a great deal of anxiety about his security and a great deal of need to conform and do the proper things. The picture he presented did not seem to me to be that which I associate with a diagnosis of post traumatic neurosis; that is, no acute and sudden event had occurred which overwhelmed this man so that he was left with marked symptoms of anxiety. It seemed to me that possibly he had suffered some local trauma to an already pathological area, an inference I drew from having read the reports of other examiners, and I felt that his preoccupation with this area together with his anxiety about being out of work, apparently the first time that he had found himself to be physically incapacitated in many, many years, led to a fixation of his symptoms. (Tr-8-9)

* * * * * *
"A. According to my concept of a post traumatic neurosis he is not suffering from post traumatic neurosis. (Tr-9)

* * * * * *
"A. According to my conception of a post traumatic neurosis Mr. Tate's findings are inconsistent with such a diagnosis. (Tr-10)

* * * * * *
"Q. 22. Doctor, it is your opinion, is it not, that the combination of whatever injury Tate suffered and his own insecurity may well have served to fix his attention on his back and intensify what in themselves might not be significant symptoms? A. Such was my opinion.

"Q. 23. And it is your opinion, is it not, Doctor, that the accident and injury brought into play and focused his attention on the previous *702 pathology in his back? A. It is my opinion that symptoms which previously were present but which he tended to disregard he now began to pay attention to, yes.

"Q. 24. Doctor, is it not also your opinion that as a result of his injury Tate believes that he cannot now work for fear of increasing the pain in his back? A. Yes, that is my opinion." (Tr-17)
As will be seen from the foregoing excerpts, Dr. Freedman diagnosed Tate's condition as a disability resulting from the accident because the injury brought into play and focused Tate's attention on the previous pathology in his back, by reason of which "fixation of symptoms" Tate cannot work for genuine fear of increasing the pain in his back. This medical testimony was introduced by defendant and is not contradicted in the record.
Dr. Freedman's definition of traumatic neurosis appears to be a technical psychiatric one. Webster's "New International Dictionary" (Second edition; unabridged) defines "Traumatic neurosis" as: "A form of neurosis seen especially in soldiers in active warfare caused by injuries and fear." This dictionary defines a "neurosis" as: "a functional nervous disorder, without demonstrable physical lesion." Common usage of the term "traumatic neurosis" in personal injury lawsuits connotes a nervous or mental disorder or disability produced by or resulting from an accident or trauma; see 42A Words & Phrases, p. 7, Traumatic Neurosis; Malone, Louisiana Workmen's Compensation p. 337, Section 276 "Traumatic hysteria or neurosis."
At this latter citation, Professor Malone states:
"Later the courts came to a recognition that a blow or other accident could produce symptoms of disabling pain or paralysis long after the observable physical signs or hurt had disappeared, and where the medical proof is satisfactory they are now willing to declare the victim of traumatic hysteria to be a disabled person entitled to compensation under the Act."
Awards of compensation for disability because of neurosis resulting from an accident in the course of employment are allowed by our Louisiana courts, Buxton v. W. Horace Williams Co., 203 La. 261, 13 So.2d 855; Dupre v. Wyble, La. App. 1 Cir., 85 So.2d 119; Ladner v. Higgins, La.App., 71 So.2d 242; Peavy v. Mansfield Hardwood Lumber Company, La.App., 40 So.2d 505; Lala v. American Sugar Refining Company, La.App., 38 So. 2d 415; Vega v. Higgins Industries, La. App., 23 So.2d 661; Porter v. W. Horace Williams Co., La.App., 9 So.2d 60; Vaughn v. Solvay Process Co., La.App. 1 Cir., 176 So. 241. "There is no doubt in our minds that nervousness, neurosis, or emotional disturbances, superinduced by injuries suffered by a workman, can be just as devastating to the ability to return to work as are physical or anatomical injuries, and are equally as compensable under the statute". Lala v. American Sugar Refining Company, La.App., 38 So.2d 415, at page 421. "As in other connections, a pre-existing weakness in the form of a neurotic tendency does not lessen the compensability of an injury which precipitates a disability neurosis." Larson, Workmen's Compensation Law, Section 42.22; Buxton v. W. Horace Williams Co., 203 La. 261, 13 So.2d 855.
The lay testimony, in part corroborated and not denied by defendant's own witnesses, indicates that this 51-year old colored laborer before the accident was a hard-working and cooperative employee, without previous record of traumatic injury. He had worked for defendant employer over a period of 23 years, except in their slack seasons, and had been steadily employed by them for three years, willing and able to work overtime long hours during the rush seasons. Before the accident Tate had been actively interested in outdoor sports, such as hunting and fishing. He had bought and paid for his own home.
However, since the accident he constantly complains of pain in the small *703 of his back, walks with stooped bearing, stiff-backed or with a limp, and his movements have been slow and stiff. He no longer assists his wife around the home or hunts or fishes, and his wife or neighbors mow the grass, etc., for him. This lay testimony is most impressive and was not shaken by searching cross-examination. "It is the accepted rule that courts will not impute perjury to apparently credible witnesses, Miller v. Hartford Live Stock Ins. Co., 165 La. 777, 116 So. 182; Fogleman v. Interurban Transportation Co., 192 La. 115, 187 So. 73, particularly in the absence of any evidence in the record to indicate that the evidence was false or unreliable. Bonanno v. Decedue, 186 La. 1041, 173 So. 756," Cockrell v. Penrod Drilling Co., 214 La. 951, 39 So.2d 429, 432-433. Further, the District Court did not reject this testimony, although discounting it somewhat as being these witnesses' observation of behavior by plaintiff which might be voluntary by the latter.
The crux of the able District Court's decision is, having rejected Dr. Unsworth's testimony and not considering Dr. Freedman's testimony, as follows:
"This leaves the plaintiff with no medical testimony whatever to substantiate his claim, and the only evidence in the record is the testimony of several of his neighbors concerning symptoms which were strictly subjective and emanating from the plaintiff himself. It is true that the plaintiff had been a reputable employee for many years and it is hard to believe that a man of his record would become a malingerer, but in view of the circumstances surrounding the case and all the testimony, the court has to come to this conclusion."
As noted, however, the District Court was constrained to find Tate malingering in the absence of any medical evidence to substantiate his claim; actually, however, the only psychiatric evidence in the record substantiates Tate's claim.
The suspicious circumstances in the record, according to counsel for defendants, are: (1) the delay in Tate's reporting the accident for almost a week; (2) Tate's immediate consultation of a lawyer just a few days after reporting the accident and for treatment to Dr. Osborn, and just a few days before his discharge by the latter. The former circumstance, of course, is not of great significance; for instance, Dr. Osborn, whose testimony was taken by defendant, frankly stated that it isn't at all rare for a workingman with a minor back strain to work several days before he seeks assistance (Tr-128), and the law reports include a multitude of similar instances.
But the latter circumstance, although consistent with the deep-seated anxiety of his employer's treatment of him, is certainly properly to be taken into account. However, both the medical and the lay testimony in this record corroborate the uncontradicted medical diagnosis of Tate's neurotic disability resulting from the accident.
As to whether Tate was malingering, Dr. Freedman testified: "It is my impression he is not" (Tr-14); "I don't know whether Mr. Tate is malingering. I think this is something that has to be proven in extramedical ways", Tr-11. According to Dr. Freedman, these extra-medical checks on malingering are: (1) Does he behave away from the doctor in a manner inconsistent with his complaints to the doctor? (Tr-11); (2) Is the prior history of hardwork and good employment record, given by the employee, accuratethat is, are his present attitude and behaviour consistent or inconsistent with that prior to the accident? (Tr-14; letter report dated May 12, 1954)
There is no evidence in the record to indicate any behaviour by Tate at any time following the accident inconsistent with that to which he testified. The District Court itself commented on Tate's excellent working record prior to the injury. Dr. Freedman's diagnosis is thus corroborated, rather than weakened, by the lay testimony.
Defendants contend that the rate of compensation should be based on a 40-hour week at the claimant's pay of $.94 per hour, *704 65% of which is a compensation rate of $24.44 per week. However, the testimony indicates the injury occurred during his employer's rush season when as a regular portion of his duties the employee worked 12-13 hours per day and was paid time-and-one-half. His earnings the week of the accident were $65.80, and for six of the eight weeks preceding the accident Tate earned in excess of $51 and as high as $58. Further, based upon a six day week and including overtime pay, plaintiff's weekly wage was $48.08, 65% of which exceeds the statutory maximum of $30 per week.
To compute the weekly wages for purposes of fixing the compensation rate, a six day week should be used when the employee does not work any fixed number of days per week, Troquille v. Lacaze's Estate, 222 La. 611, 63 So.2d 139, and overtime wages should be included in the computations when regularly paid at the time of the accident. Buxton v. W. Horace Williams Co., 203 La. 261, 13 So.2d 855, Walls v. Solvay Process Co., La.App. 1 Cir., 21 So.2d 109, certiorari denied.
Under all the facts and circumstances of this case, we do not feel defendants' action in refusing to pay compensation was arbitrary and capricious so as to entitle plaintiff to the penalties claimed under LSA-R.S. 22:658.
For the above and foregoing reasons, the judgment of the District Court herein is reversed, and it is hereby ordered, adjudged, and decreed that there be judgment herein in favor of plaintiff, Adolphus Tate, and against defendants, Gullett Gin Company, and its compensation insurer, the Liberty Mutual Insurance Company, holding said defendants liable jointly and in solido in the full sum of $30 per week commencing September 30, 1953, during plaintiff's disability, not to exceed 400 weeks in all, together with interest at the legal rate upon each delinquent installment from date of delinquency until paid; less a credit of $24.44 compensation paid. Said defendants are further cast with all costs of these proceedings and of this appeal (except the costs and deposition fee of Dr. H. R. Unsworth's inadmissible deposition).
Reversed and rendered.
NOTES
[1] Tate was originally referred by his attorney to Dr. Lewis Gebhuer of New Orleans, who examined Tate on October 1, 1953. Plaintiff did not see fit to take the testimony of this physician though counsel for defendant offered the examination report (indicating an initial diagnosis of two or three weeks further disability beyond October 1 from a left sacroiliac strain.) and attached it to what he called a "bill of exception". Of course, the District Court properly ruled that these examination reports were not admissible in evidence. The failure to take the testimony of this doctor may be construed against plaintiff, although plaintiff correctly urges that while this unfavorable inference may reflect as against the initial lumbosacral strain it is not relevant as to the existence or not of a disabling mental condition resulting from the accident for which Dr. Gebhuer did not examine Tate.