A. WILMOT DALFERES, Judge ad hoc.
This is a compensation claim in which the trial Court awarded judgment to the plaintiff. Defendants have appealed.
Plaintiff was employed as an iron worker by defendant, DIXIE MACHINE AND WELDING WORKS, INC. EMPLOYERS LIABILITY ASSURANCE CORPORATION, LTD. was the insurance carrier of the employer.
On February 23, 1960, while plaintiff was employed to erect a sign, the crane lifting the sign into position came in contact with an electric wire. Three employees who were in contact with the electric sign received electric shocks. Plaintiff was *603 thrown some ten or twelve feet from the scene and landed on his back. He was taken to Touro Infirmary for examination and released the same day. He returned to work and did work for approximately two weeks.
It is plaintiff’s contention that the present disabling condition of plaintiff is directly attributable to the accident, or that the accident triggered a latent condition existing prior to the accident which only became disabling because of the accident. It is defendant’s contention that plaintiff, prior to the accident, was suffering from a latent depressive condition which would have manifested itself on or about the time plaintiff manifested his present depressive condition without the occurrence of an accident.
It was shown in evidence that plaintiff was an iron worker, a trade which he had prosecuted for some fourteen years. He had a good work record, and at the time of the accident was earning $3.50 per hour. We entertain no doubt that as a result of the accident he suffered some injury, in spite of the fact that he worked several days following the accident. This was established by objective findings of examining physicians.
Dr. Andrew J. Sanchez, Jr., who has been in psychiatric practice since 1952, testified that he examined plaintiff on October 24, November 2 and November 30, 1960. It was his opinion that plaintiff was suffering from traumatic neurosis and was unable to return to work. He was further of the opinion that the traumatic neurosis was caused by the electric shock received at the time of the accident.
Dr. David A. Freedman, testifying in behalf of defendant, a member of the American Board of Psychiatry and Neurology, was of the opinion that plaintiff’s depression had its origin prior to the accident.
On cross-examination he was asked:
“Q. But, doctor, since he has seized on the accident to resign himself to his weakness, don’t you think his depression made the accident worse?
“A. No. I think it didn’t make his depression worse. There is a change in his way of functioning, but I don’t think his depression is worse.
“Q. Doctor, if he had not had this accident is it fair to say that he probably would have continued to work and would not have given up ?
“A. I think it is my impression that some other event would have served as well; that some event in another context would have another effect — ten years ago it would not have had the same effect.
“Q. What you are saying is speculative.
“A. I said it is my opinion.
“Q. As far as the evidence now presented to you, it shows that he discontinued work when he had the accident.
“A. Some time after the accident, yes, — the evidence I was given — the day I was given it.
“Q. Doctor, is it fair to have here a weakened ego that unconsciously seized on an accident to give up ?
“A. Again, I would prefer to phrase it as I did in my report,, which attempts to say as explicitly as I can how I feel about it, about the trouble.
“Q. Well, doctor, don’t you think that the accident had a traumatic psychological effect?
“A. No. I think that the accident served as a ready vehicle through which the dilemma from which Mr. Kimball was suffering could be resolved. I don’t think that it either accentuated or minimized. I don’t think it accentuated or minimized the dilemma he had.”
By the Court:
*604 “Q. He used the accident for an excuse for all his trouble?
“A. As an explanation, this is the point I attempted to make.”
By Mr. Corey:
“Q. He did that subconsciously?
“A. Yes, I have no feeling that Mr. Kimball is simulating, if that is what you mean.”
Later in the cross-examination, the doctor testified as follows:
“Q. No. But you do admit that he is suffering from a neurosis.
“A. This, I think there is no question about it.
“Q. In your opinion he is disabled as a result of this neurosis.
“A. Yes.
"Q. Doctor, is it your opinion that the accident and injury brought into play and focused his attention on symptoms which he previously disregarded ?
“A. It is my opinion that the accident provided an explanation, a point of focus, to which he could refer symptoms of which he was already aware.
“Q. Of what?
“A. Of which he was already aware.
“Q. But until the accident these symptoms were not disabling, is that not true ?
“A. He evidently worked up until the time of the accident and for a brief period after, I believe, so this would seem to be the case.
“Q. Before the accident they were not disabling?
“A. Yes.”
Because of the lack of objective symptoms in the field of psychiatry and the reliance which must be placed on subjective symptoms, it is not unusual for eminent experts to differ in their findings. The neurotic patient may act differently to the mode of questioning and the general attitude of the examiner. This may influence the findings upon which the opinions are based. When the medical testimony is as conflicting as in this case and the opinions of the experts are formed by limited consultation with the plaintiff, much weight must be given to the testimony of lay witnesses.
The lay testimony of fellow workers and associates who knew plaintiff for several years before the accident has supplied ample evidence of the marked changes in the behavior pattern of plaintiff following the accident. This lay testimony stands un-contradicted. Plaintiff remained in the New Orleans area from the date of the injury to the date of trial and was certainly subject to observation by defendant.
In addition to a splendid work record, plaintiff had no record of a previous accident and had never claimed compensation.
The trial Court in its reasons for judgment determined “that the disabling neurosis which the plaintiff is suffering was caused or triggered by the heavy electric shock which he received and, accordingly, amounts to traumatic neurosis.” We think the evidence amply supports the findings of the trial Judge. Tate v. Gullett Gin Company & Liberty Mutual Insurance Company, La.App., 86 So.2d 698; Malbreaux v. Barber Brothers Company, La.App., 91 So. 2d 62; Miller v. United States Fidelity & Guaranty Company, La.App., 99 So.2d 511.
For the foregoing and above reasons, the judgment of the District Court herein is affirmed.
Affirmed.